**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SOLON PHILLIPS,** individually, and as Managing Member conducting the wind-up of <br><br> **REMUS ENTERPRISES, 1 LLC** <br><br> and <br><br> **REMUS ENTERPRISES REAL ESTATE GROUP, LLC,** <br> 3922 Southern Ave., S.E., Unit 301 <br> Washington, D.C. 20020 <br><br> Plaintiffs, <br><br> v. <br><br> **QUINN V. BREECE,** individually and in her capacity as attorney at Montero Law Group, LLC; <br> 10770 Columbia Pike, Suite 401 <br> Silver Spring, MD 20901 <br><br> **JUDE E. WIKRAMANAYAKE,** individually and in his capacity as partner at Montero Law Group, LLC; <br> 10770 Columbia Pike, Suite 401 <br> Silver Spring, MD 20901 <br><br> **MONTERO LAW GROUP, LLC,** <br> 10770 Columbia Pike, Suite 401 <br> Silver Spring, MD 20901 <br><br> **JULIO GUZMAN,** <br> 4706 Renn Street <br> Rockville, MD 20853 | Case No. 1:26-cv-1092 <br><br> JURY TRIAL DEMANDED <br><br> **COMPLAINT FOR DAMAGES** <br><br> Civil RICO, 18 U.S.C. §§ 1962(c) & (d); <br> Abuse of Process; <br> Civil Conspiracy; <br> Slander of Title; <br> Tortious Interference |

1

| | |
|---|---|
| and<br><br>**YONI NASI,**<br>individually, as directing principal<br>of the Lien Extortion Enterprise;<br>Address for service: State of Israel<br><br>Defendants. | |

## INTRODUCTION

This case is not about aggressive litigation. It is about the deliberate use of litigation as a tool to encumber real property, maintain that encumbrance regardless of legal merit, and extract money as the price of removal.

Between August 2023 and the present, Defendants engaged in a coordinated scheme to file and maintain liens and lis pendens against multiple properties owned or controlled by Plaintiffs. Each filing served the same function: to freeze the ability to sell property and force payment under economic pressure.

The pattern is direct and repeated. Defendants filed a lawsuit that did not support a lis pendens. They recorded one anyway. When confronted and forced to remove it, they did not correct the defect. They created a new theory, filed a new action in a different jurisdiction, and recorded a new lis pendens immediately thereafter.

That new theory depended on claims that do not withstand even basic scrutiny. The attorney Defendants asserted that their client, Yoni Nasi, was a member of the entity that owned the subject property. They relied on an Operating Agreement that, on its face, identifies a different legal entity — one that never owned the property. The Defendant

2

attorneys further asserted that a dispute existed regarding ownership of the property. No such dispute existed.

The supposed ownership dispute was equally fabricated. Nasi was not a member of the entity that owned the property. He never had any conversation with Plaintiff — the sole member — about ownership, membership, or control. There was no disagreement. There was no competing claim. There was no dispute.

The derivative action the attorneys filed was completely made up and was not filed to resolve a dispute. It was created to manufacture one, for the sole purpose of justifying the filing of lis pendens against Plaintiffs' properties. Those lis pendens were not filed to protect any legitimate claim to title. They were filed to exert pressure and extract money from Plaintiff as the price of their removal.

But it did not stop there.  The same attorney Defendants, recruited by a separate contractor, Defendant Guzman, filed yet another lien on a separate property that was contracted for sale and made the same demands to pay for removal.  In total, nine liens were improperly placed on Plaintiffs' properties—all of them part of a scheme to extract money for removal.

This was not a series of isolated legal filings.  It was a system.  When one predicate failed, another was constructed.  When one lien was removed, another was immediately filed. The objective remained constant: keep a lien in place long enough to force payment.

This conduct constitutes a pattern of racketeering activity under 18 U.S.C. §§ 1962(c) and (d), and gives rise to the claims asserted below.

## PARTIES

**PLAINTIFFS**

1. Plaintiff Solon Phillips ('Phillips') is a resident of Maryland and the sole managing member of Remus Enterprises Real Estate Group, LLC and Remus Enterprises, 1 LLC. He brings this action: (i) individually, for harm suffered in his personal capacity including a coerced $30,000 payment and direct economic harm to his business; and (ii) as managing member conducting the wind-up of Remus Enterprises, 1 LLC, a Maryland limited liability company formally and voluntarily dissolved, pursuant to Md. Code, Corps. & Ass'ns §§ 4A-210 and 4A-904. Maryland law expressly authorizes a dissolved LLC's managing member to prosecute all claims arising in connection with the entity's properties and business operations during its existence and wind-up period.

2. Plaintiff Remus Enterprises Real Estate Group, LLC ('RERG') is a limited liability company organized under the laws of the District of Columbia, in good standing, with its principal place of business at 3922 Southern Ave., S.E., Unit 301, Washington, D.C. 20020. RERG is actively engaged in real estate development and investment. RERG owned 6413 Allegheny Ave., Takoma Park, Maryland at the time of the mechanic's lien filing and suffered direct economic harm as a result.

**DEFENDANTS**

3. Defendant Quinn V. Breece ('Breece') is an attorney licensed in the District of Columbia and Maryland. At all times relevant herein, Breece was employed as an attorney at Defendant Montero Law Group, LLC and acted within the scope of that

employment. Breece recorded lis pendens against Plaintiffs' properties, filed actions in DC Superior Court, and filed a mechanic's lien against Plaintiffs' property, all as described herein.

4. Defendant Jude E. Wikramanayake ('Wikramanayake') is an attorney licensed in Maryland and the District of Columbia. He is a partner at Defendant Montero Law Group, LLC. At all times relevant herein, Wikramanayake acted within the scope of his employment and partnership at Montero. Wikramanayake recorded a lis pendens against Plaintiffs' property, transmitted demands for the release of liens, and coordinated the activities described herein, all on behalf of Montero's clients.

5. Defendant Montero Law Group, LLC ('Montero') is a Maryland limited liability company operating as a law firm at 10770 Columbia Pike, Suite 401, Silver Spring, MD 20901, doing business in the District of Columbia. Montero provided the organizational platform, professional resources, letterhead, and institutional authority through which Defendants Breece and Wikramanayake executed the acts described herein. Montero is vicariously liable under respondeat superior and directly liable as a RICO enterprise participant.

6. Defendant Julio Guzman ('Guzman') is a Maryland resident who at all relevant times operated through affiliated construction entities including United Builders DC Incorporated. Guzman entered into agreements with Phillips for construction work on multiple properties and a joint venture agreement for 6413 Allegheny Ave. Upon

the collapse of that relationship, Guzman coordinated with Defendants Breece, Wikramanayake, and Montero in the activities described herein.

7. Defendant Yoni Nasi ('Nasi') is an Israeli citizen currently residing in Israel. At all times relevant herein, Nasi was represented by Defendants Breece, Wikramanayake, and Montero Law Group in connection with claims against Plaintiffs. Nasi is sued in his individual capacity as the directing principal of the Nasi track of the Lien Extortion Enterprise, as described herein.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) over Plaintiffs' civil RICO claims. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, as those claims form part of the same case or controversy as the federal RICO claims and arise from the same nucleus of operative facts.

9. Plaintiff Phillips brings representative claims pursuant to Fed. R. Civ. P. 17(b)(2). His authority derives from Md. Code, Corps. & Ass'ns §§ 4A-210 and 4A-904, which expressly authorize a dissolved LLC's managing member to prosecute claims on behalf of the entity during wind-up.

10. For purposes of standing and injury, the following mapping applies throughout this Complaint: (a) Plaintiff Phillips individually suffered the coerced $30,000 payment at the 8th Street closing and direct damage to his personal real estate business, deal

6

pipeline, and business reputation; (b) Remus Enterprises, 1 LLC, through Phillips as wind-up representative, suffered carrying costs, delayed sale proceeds, and interference with the sale of 3308 16th Street NE; and (c) Plaintiff RERG suffered the failed Allegheny closing, forced price reduction, bond costs, and carrying costs on 6413 Allegheny Ave. Each plaintiff has standing to bring the claims asserted on its behalf, and Phillips has standing to bring individual claims for harms suffered in his personal capacity.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including the recording of liens in the DC land records, the filing of lawsuits in DC Superior Court, the interference with property closings in this District, and the transmission of extortion demands directed at DC real estate transactions.

12. This Court has personal jurisdiction over all Defendants. Breece and Wikramanayake are licensed in DC, regularly practice here, and filed instruments in DC land records. Montero conducts legal business in DC through its attorneys. Guzman performed contracting work on DC properties and filed instruments in DC land records. Nasi, during the period 2022-2023, was physically present in the United States, transacted business in this jurisdiction, executed contracts affecting DC real property, and directed litigation filed in DC courts through DC-licensed counsel, thereby purposefully availing himself of this jurisdiction.

**FACTUAL ALLEGATIONS**

7

**How Fraudulent Liens Freeze Real Estate Sales**

13. A lien on title prevents the sale of a home because title insurance companies do not evaluate the legal merits of a pending lawsuit or recorded lien. Their sole concern is risk. Any pending lien or litigation affecting real property — regardless of its legal validity — causes a title company to refuse to issue title insurance. Without title insurance, no mortgage lender will fund a purchase. The result is a complete, automatic freeze on the property's sale, regardless of whether the lien has any merit.

14. Defendants knew this mechanism intimately. Breece and Wikramanayake are experienced real estate attorneys who have litigated title matters in the District of Columbia and Maryland. Guzman performed real estate renovation work and attended property closings. Nasi, as an E-2 Treaty Investor in US real estate, participated in property transactions in this jurisdiction and understood the role of title clearance in real estate sales. They deliberately exploited this mechanism — recording liens with no legal basis to freeze sales, then demanding money as the price of removal.

**The Remus Entities, Their Properties, and Background**

15. At all relevant times, Phillips owned, managed, and operated multiple investment properties in the District of Columbia and Maryland through the Remus entities and RERG. His business model was to purchase, renovate, and sell residential properties. Defendants were intimately familiar with this business model through years of litigation and a contracting relationship.

16. Remus Enterprises, 1 LLC ("Original Remus") was a Maryland limited liability company formed in 2018 with Phillips as its sole managing member. Original Remus was the entity through which Phillips conducted his real estate investment business, purchasing, renovating, and selling residential properties primarily in the District of Columbia and Maryland. Original Remus was formally and voluntarily dissolved on July 7, 2023.

17. In or around 2023, Phillips sought to transfer the business to the District of Columbia, where the majority of his properties were located. He voluntarily cancelled Original Remus in Maryland with the intent of reincorporating the same entity in DC. He was subsequently informed that a cancelled Maryland entity could not be transferred or converted. Phillips returned to Maryland and reincorporated what he believed to be the same entity. Due to the prior cancellation, however, Maryland SDAT treated the new filing as an entirely new and separate legal entity — Remus Enterprises 1, LLC — a separate entity with the comma after the number — rather than a reactivation of Original Remus.

18. The creation of two similarly-named entities was not intentional, was not designed to confuse anyone, and was not an attempt to avoid any obligation or liability. It was the unintended consequence of an administrative correction that did not proceed as planned. The newly formed entity never purchased any properties and conducted no material business. Both entities have since been voluntarily cancelled. Phillips now

9

conducts his real estate business through Remus Enterprises Real Estate Group, LLC, a District of Columbia company currently in good standing.

**Nasi's Relationship With Phillips and the Remus Entities**

19. Nasi arrived in the United States in October 2022 for the purpose of securing an E2 investment visa so he could expand his Israeli construction business. Through intermediary Joseph Barr of Visa to America, Nasi and Phillips negotiated a relationship. A proposed Purchase Agreement for Nasi to purchase a portion of Remus 1 was drafted but never executed — Phillips did not sign it, no closing occurred, and both parties verbally acknowledged it was cancelled.

20. Instead, the parties entered a different agreement, one structured solely to assist Defendant Nasi in securing his E-2 investor visa. On October 7, 2022, Remus Enterprises 1, LLC and The Nassi Group, Inc. entered a contract giving The Nassi Group the exclusive right to perform all of Remus 1's construction needs for three years in exchange for $150,000. This agreement was ratified by Nasi's final payment on October 25, 2022, memorialized by the Receipt of Payment issued the same day. That receipt — addressed to The Nassi Group, Inc., ATTN: Yoni Nassi, signed by Phillips — states expressly that the $150,000 was received for "the exclusive right to perform all construction needs for the next three years." It makes no reference to membership in any LLC. Nasi has possessed this receipt since October 25, 2022.

21. Phillips subsequently offered Nasi an opportunity to participate as a silent partner in specific properties. Phillips emailed Nasi an Operating Agreement for Remus

10

Enterprises 1, LLC. The Operating Agreement required an initial contribution of $150,000 as a condition of membership. Nasi admitted in sworn deposition testimony that he did not make this $150,000 initial contribution. Nasi also could not legally be an active member of Remus 1 because he lacked a social security number, which was required for Remus 1 to secure commercial mortgage financing. Nasi signed a Silent Partner Acknowledgment confirming he understood he was not a member but a silent partner only.

22. The Operating Agreement that Nasi signed was for Remus Enterprises 1, LLC — the subsequently formed entity with the comma after the number, which never owned any property. The property at 3308 16th Street NE was purchased by and titled in Original Remus — Remus Enterprises, 1 LLC, the entity with the comma before the number. Nasi's claimed membership interest, even if legally perfected, was in a different entity than the one that owned the property. This means the predicate for every lis pendens on 16th Street was legally defective on its face from the moment of filing.

23. In May 2023, Nasi abruptly left the United States and returned to Israel without notifying Phillips, any Remus team member, or his visa sponsor. He abandoned the 16th Street Project, stopped paying the mortgage, ceased all construction management duties, and allowed his E-2 visa to lapse.  Nasi was approved for his E-2 Visa based in substantial part on the $150,000 payment made on behalf of his company, The Nassi Group, Inc., for the exclusive right to perform construction

services in the United State for Remus—the same payment Defendants now falsely characterize as membership consideration in a Remus entity.

24. On July 18, 2023, Phillips issued a formal Involuntary Withdrawal Letter pursuant to the Operating Agreement, formally terminating Nasi's silent membership. From July 18, 2023 forward, Nasi had no membership interest — active or silent — in any Remus entity.

**The Statutory Framework and the Legal Defect in Each Lien**

25. DC Code § 42-1207(a), as amended by the Lis Pendens Amendment Act of 2010 (effective May 27, 2010), provides that a lis pendens may only be filed in connection with a pending action asserting an ownership interest in real property situated in the District of Columbia. The 2010 amendment specifically narrowed the prior statute to require that the predicate action assert the claimant's own ownership interest in the specific property. The DC Court of Appeals confirmed this tighter standard in *Garcia v. Tygier*, 295 A.3d 594, 601 (D.C. 2023).

26. A membership interest in a limited liability company is not an ownership interest in the LLC's real property. The company owns the property. The member owns an interest in the company. These are legally distinct under Maryland and DC law, and under basic corporate law principles applicable in every American jurisdiction. An action asserting a membership interest in an LLC — as distinct from an ownership interest in the LLC's real property — does not satisfy the amended § 42-1207(a)

standard. This legal distinction is the foundation for the falsity of every lis pendens in this case. It is referenced but not re-argued in the predicate act allegations that follow.

27. Defendants may invoke *Bloom v. Beam*, 99 A.3d 263 (D.C. 2014), which held that a lis pendens is not false if it 'merely accurately recites the fact of the filing of the lawsuit.' *Bloom* does not control here. First, *Bloom* was decided under the 2001 version of § 42-1207(a) and expressly declined to apply the 2010 amendment. Second, the falsity claim here is not that the underlying lawsuit would lose on the merits — it is that the predicate actions did not qualify under the amended statute in the first place.

**The Entity Mismatch and the Fabricated Derivative Theory**

28. On August 4, 2023, Defendants Breece and Wikramanayake filed a Complaint against Plaintiffs in the Montgomery County Circuit Court in Maryland.  (See Ex. 1, Maryland Complaint).  With this filing, Defendants filed a lis pendens on 3308 16th Street NE, a property listed for sale by Remus.  Defendants' theory justifying the filing of lis pendens on 3308 16th Street NE depended on two propositions: first, that Nasi was a member *and owner* of the entity that owned the property; and second, that a dispute existed between the members regarding ownership of that property.

29. Defendants' own evidence defeats both propositions.

30. The Operating Agreement Defendants relied upon identifies the entity as "Remus Enterprises 1, LLC."

13

31. That entity is legally distinct from "Remus Enterprises, 1 LLC" — the entity that held title to 3308 16th Street NE.

32. Only Remus Enterprises, 1 LLC — the entity with the comma before the number — owned the 16th Street property.

33. Remus Enterprises 1, LLC — the entity with the comma after the number, the entity identified in the Operating Agreement — never owned any property.

34. Defendants made the argument that the distinction between these two entities is not semantic. They are separate legal entities formed at different times, with different Maryland SDAT registration numbers, and only one ever held title to any real property.

35. Accordingly, even if the Operating Agreement were accepted at face value, it does not establish Nasi's membership in the entity that owned the property. It establishes, at most, a claimed relationship with a different entity — one that never held title to 3308 16th Street NE.

36. Defendants nevertheless used that Operating Agreement to assert claims affecting title to property owned by a separate entity. That mismatch appears on the face of the document itself. Breece and Wikramanayake, as experienced real estate attorneys who had litigated the entity distinction for months, knew it.

37. The second fabrication is equally clear. A derivative action requires a genuine intra-entity dispute — a refusal by management to enforce the entity's rights — that gives a member standing to act on its behalf.

14

38. No such dispute existed between Phillips and Nasi regarding who owned the 16th Street property.

39. Phillips acknowledged that Remus Enterprises, 1 LLC owned the property. Nasi's own Maryland complaint acknowledged the same. Neither party claimed otherwise.

40. Phillips and Nasi did not speak about ownership, membership, or control of the property during the period in which the lis pendens were filed.

41. There was no disagreement. There was no competing claim. There was no dispute.

42. The derivative theory therefore did not arise from an actual dispute. It supplied a mechanism to assert a property-based claim where none otherwise existed, enabling the filing of a lis pendens on a property to which Nasi had no cognizable claim.

43. The Maryland Lawsuit asserted both ownership and membership rights.  When that was exposed as legally insufficient to justify a lis pendens, Defendants did not correct the defect.  They constructed a new theory — derivative title — that was equally baseless but generated a new instrument for a new encumbrance—all the while demanding money be placed into their escrow account for the removal of the baseless lis pendens.  This is not aggressive litigation. It is fabricated storytelling in service of extortion.

**The Specific False Statements in Each Predicate Act**

44. Each lien and lis pendens filed by Defendants Breece and Wikramanayake came with a demand for money to be paid into their escrow account for Defendants Nasi and Guzman.  Each lien and lis pendens also contained specific false statements of fact.

15

This section identifies those false statements with the particularity required by Fed. R. Civ. P. 9(b) and is incorporated by reference into each count of this Complaint. Each false statement identified below is established by documentary evidence in the public record or by Defendants' own written admissions — evidence that Defendants cannot deny without contradicting the face of their own recorded instruments.

**PREDICATE ACT 1 — Maryland Lawsuit and First Lis Pendens, 3308 16th Street NE (August 22, 2023)**

45. In August 2023, Defendants Breece and Wikramanayake, acting on behalf of Montero Law Group, LLC, filed a Civil Complaint for Declaratory Judgment, Damages, and Injunctive Relief in the Circuit Court for Montgomery County, Maryland, captioned *Yoni Nasi v. Solon Phillips, et al.*, Case No. C-15-CV-23-003013 (the "Maryland Lawsuit"). (Ex. 1).

46. The Maryland Lawsuit was filed by Breece and Wikramanayake under the name of Montero Law Group, LLC, and both attorneys signed the complaint as attorneys for Nasi.

47. The Maryland Lawsuit sought a declaration that Nasi was an owner and member of Remus Enterprises, 1 LLC — not an owner of real property.

48. No cause of action in the Maryland Lawsuit asserted that Nasi held title to or an ownership interest in 3308 16th Street NE or any other real property.

16

49. Paragraph 39 of the Maryland Lawsuit — filed by Breece and Wikramanayake — admitted on its face that Nasi's $150,000 was invested in the LLC, not in any real property.

50. Paragraph 40 of the Maryland Lawsuit — filed by Breece and Wikramanayake — admitted on its face that the 16th Street property was purchased by Defendant Remus LLC — the company — not by Nasi personally.

51. A membership interest in an LLC is not an ownership interest in the LLC's real property, as established in paragraph 26 above.

52. On August 22, 2023 — the same day the Maryland Lawsuit was filed — Defendant Wikramanayake recorded a Notice of Lis Pendens against 3308 16th Street NE, Document No. 2023072891, in the DC land records, purporting to tie the Maryland Lawsuit to the DC property.

53. The lis pendens falsely stated that the pending Maryland action directly asserted an ownership interest in real property.

54. As of August 22, 2023, Original Remus had been formally dissolved for forty-six days.

55. As of August 22, 2023, Nasi had been formally expelled by the Involuntary Withdrawal Letter dated July 18, 2023 — thirty-five days before the first lis pendens was recorded.

17

56. The lis pendens named Remus Enterprises 1, LLC — the entity with the comma after the number — when the property was titled in Remus Enterprises, 1 LLC — the entity with the comma before the number — two legally distinct entities.

57. Defendant Wikramanayake, as counsel of record in years of related litigation involving both entities, knew of this distinction at the time he recorded the lis pendens.

58. On January 23, 2024, attorney Bryan K. Short of Effectus PLLC transmitted a written letter by First Class Certified Mail to Defendant Wikramanayake at Montero Law Group, LLC, demanding immediate cancellation of the first lis pendens by February 6, 2024.

59. The January 23, 2024 letter identified the first lis pendens as wrongfully filed in direct contravention and violation of DC Code § 42-1207(b).

60. The January 23, 2024 letter cited — by name and citation — *Garcia v. Tygier*, 295 A.3d 594, 605 (D.C. 2023), the identical legal authority on which this Court will be asked to rely.

61. The January 23, 2024 letter warned that failure to cancel the lis pendens would result in Phillips pursuing claims in court and requesting sanctions under Superior Court Rule DC 11.

62. The January 23, 2024 letter notified Defendants Breece and Wikramanayake that Effectus PLLC — Plaintiffs' own counsel at that time — had itself been sanctioned

$15,000 by the DC Superior Court for filing an identical improper lis pendens in *1461 Chapin St NW LLC v. Mulugeta Marcus*, Case No. 2023-CAB-001776.

63. Defendants Breece and Wikramanayake therefore had written notice, as of January 23, 2024, that the first lis pendens was legally defective, that the specific controlling authority had been identified, and that sanctions exposure was documented and imminent.

64. On February 6, 2024 — the exact deadline set by the January 23, 2024 letter — Defendant Breece cancelled the first lis pendens.

65. Defendant Breece cancelled the first lis pendens not voluntarily, not in good faith, and not because she concluded it lacked merit — but because she was compelled to do so by a written sanctions threat identifying the filing as legally indefensible.

**PREDICATE ACT 2 — Manufactured DC Lawsuit and Second Lis Pendens, 3308 16th Street NE (February 7, 2024)**

66. Defendants Breece and Wikramanayake initially filed the Maryland Lawsuit asserting claims regarding LLC membership but did not assert that Nasi held an ownership interest in any real property.

67. After receiving written notice identifying the first lis pendens as legally defective under controlling authority, Defendants Breece and Wikramanayake cancelled the filing on the exact deadline imposed by that notice.

68. Defendants Breece and Wikramanayake did not amend the Maryland Lawsuit to add a property-based claim.

69. On February 5, 2024 — one day before the compelled cancellation deadline — Defendants filed a brand new lawsuit in DC Superior Court, captioned *Yoni Nasi v. Remus Enterprises*, Case No. 2024-CAB-000785, with the same parties and the same property, now styled as a quiet title and derivative action. (Ex. 2, DC Complaint).

70. The DC quiet title action was not filed because Defendants Breece and Wikramanayake had discovered a new legal basis. It was filed because Defendants needed a DC-filed instrument asserting a property claim to manufacture a new lis pendens predicate after the Maryland Lawsuit had been exposed as legally insufficient for that purpose.

71. The DC quiet title action's own Summary — paragraph 2 — stated that the action was brought because Phillips "terminated the LLC, then started a new LLC with a nearly identical name, and now claims the new LLC has taken ownership and control of all the assets." First, that claim was false because Phillips never made such a claim. Second, that is a claim about which LLC owns the property — not a claim that Nasi personally owns it.

72. The DC quiet title action sought a declaration that title to the properties "remain with the Original Remus LLC" — not that Nasi personally held title. Paragraph 60 of the DC complaint expressly stated that Nasi maintained the action "to enforce the ownership rights of the Original Remus LLC." A derivative claim asserted on behalf of an LLC is not an assertion of the claimant's own ownership interest in real property under DC Code § 42-1207(a).

20

73. Defendant Breece signed and filed the DC quiet title action on behalf of Montero Law Group, LLC. Breece also personally verified the DC complaint under oath, affirming the facts as true, because "Plaintiff Yoni Nasi is absent from the District of Columbia."

74. On February 7, 2024 — one day after the compelled cancellation of the first lis pendens — Defendant Breece recorded a new Notice of Lis Pendens against 3308 16th Street NE, Document No. 2024016022, premised on the newly filed DC quiet title action.

75. The second lis pendens instrument, Document No. 2024016022, was signed by Breece as affiant under oath. Item 1 of the instrument stated that the pending DC action "directly asserts an ownership interest in real property."

76. Item 5 of the same instrument — signed by Breece — stated that the object of the DC action was to obtain an order declaring that "Remus Enterprises, 1 LLC ('Original Remus') owns the subject property." That is an assertion that the LLC owns the property — not that Nasi personally owns it.  Item 1 and Item 5 of Breece's own sworn instrument directly contradict each other.

77. Item 7 of the instrument stated: "This Notice is intended to affect the estate of: Remus Enterprises, 1 LLC." The lis pendens was filed to protect a dissolved LLC's title interest, not the claimant's own ownership interest in real property as required by DC Code § 42-1207(a).

78. The DC quiet title action was styled in part as a derivative action brought by Nasi on behalf of Remus Enterprises, 1 LLC.

21

79. A derivative action requires the plaintiff to be a member of the entity on whose behalf the suit is brought.

80. Nasi was not a member of Remus Enterprises, 1 LLC — Original Remus — the entity on whose behalf the derivative action purported to be brought.

81. Whatever interest Nasi claimed arose from an Operating Agreement for Remus Enterprises 1, LLC — the subsequently formed entity with the comma after the number — which never owned any property and is a legally distinct entity from Original Remus.

82. Defendants Breece and Wikramanayake knew Nasi was not a member of Original Remus because they had litigated the entity distinction for months in the Maryland proceeding and because they themselves filed the lis pendens on Predicate Act 1 naming the wrong entity.

83. A derivative action also requires a genuine intra-LLC dispute — a refusal by management to enforce the LLC's own rights — that gives a member standing to sue on the LLC's behalf.

84. No such dispute existed.

85. Phillips never claimed that Original Remus did not own the 16th Street property. He acknowledged that Original Remus owned it.

86. Nasi never disputed that Original Remus owned the 16th Street property. His Maryland complaint did not allege otherwise.

22

87. There was no disagreement between the members of Original Remus about who owned the 16th Street property. Both members agreed the LLC owned it.

88. Defendants fabricated a title dispute that did not exist — casting Phillips's formation of a successor entity as a fraudulent transfer of title — in order to manufacture standing for a derivative action that had no legitimate intra-LLC basis.  All this was done to freeze the sale of 16th Street and to extort money from Plaintiff.

89. The derivative action was not brought to enforce Original Remus's legitimate legal rights. It was constructed after the Maryland Lawsuit was exposed as legally insufficient to support a lis pendens, for the sole purpose of creating a new predicate for a new lis pendens on the same property and more importantly, to extort money from Plaintiff.

90. The one-day interval between the compelled cancellation and the new filing is direct and irrefutable evidence that the DC lawsuit was manufactured for the sole purpose of creating a new lis pendens predicate which was created to extort money from Plaintiff.

91. The DC Superior Court and the Maryland Court subsequently dismissed both cases, confirming that it lacked a valid legal basis.

92. **PREDICATE ACTS 3 THROUGH 7 — Lis Pendens on Additional Properties.** Defendants Breece and Wikramanayake recorded lis pendens against five additional Plaintiffs' properties: 3922 Southern Ave. SE, 3812 W Street SE, 4729 1st Street SW, 2220 13th Street NE, and 608 Tennessee Ave. NE. Each instrument contained the same

23

false statement: that a pending action directly asserted an ownership interest in the subject property. Each was premised on the same Maryland lawsuit and/or DC quiet title action that formed the basis for Predicate Acts 1 and 2 — neither of which asserted Nasi's ownership interest in any real property. All of the defects identified in Predicate Acts 1 and 2 apply with equal force to each of these five instruments. Upon demand, Defendants swiftly agreed to remove these liens — an implicit acknowledgment that they lacked legitimate basis.

93. **PREDICATE ACT 8 — Fraudulent Invoice, 6813 8th Street NE (January 2024).** Defendant Guzman had been paid approximately $230,000-$250,000 for construction work on 6813 8th Street NE and had not completed the project by the contractually required date. Without notice to Phillips, Guzman independently located the title company handling the closing and transmitted a fabricated invoice directly to them claiming over $300,000 in labor and materials was owed. Guzman had already been paid for his work on the property.

94. This invoice had never been presented to Phillips prior to the closing date, had no supporting documentation, and was fabricated for the sole purpose of extracting payment at closing by holding the transaction hostage. The title company informed Phillips it would not close until the dispute was resolved, placing innocent third-party buyers in an impossible position through no fault of their own. On January 10, 2024, Guzman sent Phillips a written email stating: "I am going to get paid on 8th street settlement even if the judge later determine I need to refund you."

95. This statement confirms Guzman knew his demand was not based on legitimate legal entitlement. To protect the innocent buyers and allow them to close on their home, Phillips was forced to pay Guzman $30,000 under economic duress. Phillips subsequently filed a lawsuit and sought an emergency injunction to prevent Guzman from repeating this conduct against future closings. At the injunction hearing, Defendant Breece appeared as Guzman's attorney of record and represented to the court that Guzman now had legal representation and would not repeat the conduct. The court denied the injunction based on that representation. Defendant Breece's appearance at that hearing as Guzman's counsel — and her representation to the court on his behalf — establishes her knowledge of and involvement in the Guzman contractor track from its earliest stage, predating her filing of any lis pendens.

96. **PREDICATE ACT 9 — Mechanic's Lien, 6413 Allegheny Ave. (July 23, 2024).** On January 16, 2024, Phillips issued a formal cease-and-desist letter terminating all business with Guzman. On July 23, 2024 — six months after termination — Defendant Breece filed a mechanic's lien petition against 6413 Allegheny Ave. through United Builders DC Incorporated, claiming work was performed in 2024.

97. Defendants Breece and Wikramanayake knew that the filing was time-barred. First, by Guzman's own admission to his own attorney. On June 12, 2025, Guzman sent an email directly to Wikramanayake — inadvertently copying Phillips and other parties — containing his own drafted statement of facts for a proposed counterclaim. In that email, Guzman stated: "By the end of 2023 I stopped all projects." Under Maryland

law, a mechanic's lien must be filed within 180 days of the last day work was performed. If work stopped by the end of 2023, the 180-day window expired no later than June 2024 — before the lien was filed on July 23, 2024. Wikramanayake therefore had written confirmation from his own client that the statute of limitations had run before the lien was filed. Second, during Guzman's December 2024 Deposition, he stated under oath that he did not work on any Remus property in 2024. Despite this knowledge, Breece filed the mechanic's lien and Wikramanayake thereafter demanded money for its release.

98. This is further confirmed by Defendant Wikramanayake's own June 4, 2025 written admission: "I will ask Julio for any written documentation that work at his direction or by him was done after January 16, 2024 and confirm. He has represented that such work was done, so it may be his word/oral testimony." The lien was filed and maintained with no documentary evidence of qualifying work, with actual knowledge from the client that all work had stopped by end of 2023, and with full awareness that the statutory deadline had passed. In December 2024, a Maryland court ordered removal of the lien.

**The April 10, 2024 Extortion Demand — The Enterprise in One Document**

99. On April 10, 2024, Defendant Wikramanayake transmitted a written email to Plaintiff's counsel from his Montero email address, on Montero letterhead, with Defendant Breece and Montero managing principal Manny Montero copied. The email was explicitly labeled: "NOTICE: THE BELOW EMAIL IS NOT INTENDED

26

TO BE PART OF ANY SETTLEMENT NEGOTIATIONS, AND IS INTENDED TO BE ADMISSIBLE AS EVIDENCE IN ANY MATTER."

100. The email was sent "on behalf of Mr. Nasi and Mr. Guzman, and any of their affiliated business entities." This single sentence is the connective tissue of the entire enterprise. It demonstrates that the Nasi lis pendens track and the Guzman contractor track were coordinated by the same attorneys through the same firm on behalf of both clients simultaneously.

101. The email conditioned removal of the lis pendens on Plaintiffs' agreement to surrender all sale proceeds into Defendants' own personal escrow account until all litigation between all related parties concluded across every pending case. The email expressly stated: "We would extend the same terms to the other properties as well" — confirming that all encumbered properties were subject to the same demand.

102. The demand was not limited to the specific property at issue. It conditioned removal of every lien on escrow of proceeds from every property in every lawsuit between every related party — all to be held in Defendants' own personal escrow account. A legitimate lis pendens protects a specific title claim on a specific property. This demand encompassed an entire real estate portfolio across every pending case. The April 10, 2024 email is explicitly labeled admissible by Defendants themselves.

103. As of April 10, 2024, Guzman had filed no lawsuit against Plaintiffs in any court.

104. As of April 10, 2024, Guzman had no pending legal claim of any kind against Plaintiffs.

105. As of April 10, 2024, Montero Law Group had filed no instrument in any court purporting to represent Guzman's interests against Plaintiffs.

106. Defendant Wikramanayake's April 10, 2024 email was the first formal act by any Montero attorney purporting to act on Guzman's behalf against Plaintiffs.

107. Defendant Wikramanayake purported to act on Guzman's behalf and demand proceeds from Plaintiffs' property sales before any attorney-client relationship between Montero and Guzman had been formalized in any filed proceeding.

108. The absence of any pending Guzman claim as of April 10, 2024 establishes that Wikramanayake's coordination with Guzman predated any legitimate legal representation and constitutes direct evidence of a pre-existing agreement to extort.

**The Maryland Court Proceedings and the Appellate Record**

109. On October 30, 2024, the Circuit Court for Montgomery County, Maryland issued a comprehensive Order in *Nasi v. Phillips* (Case No. C-15-CV-23-003013), making nine specific findings: (1) Nasi is not and never was an owner of Plaintiffs' company; (2) Nasi is not and never was a member; (3) Nasi was at most a silent member giving him no ownership rights in any property; (4) Nasi has no ownership interest in 3308 16th Street NE; (5) Nasi abandoned all rights to the property; (6) Nasi made no financial contribution toward membership; (7) the $150,000 Nasi paid was for contractor rights only; (8) Nasi breached his contractor contracts; and (9) Nasi breached his vehicle contract.

28

110. On March 19, 2026, the Appellate Court of Maryland reversed the circuit court's grant of summary judgment on the sole and narrow ground that a genuine dispute of material fact existed as to what the $150,000 payment was for — whether it was paid for exclusive construction rights or for some other purpose. *Nasi v. Phillips*, No. 415, Sept. Term 2025, 2026 WL 775407 (Md. App. Mar. 19, 2026). The appellate court did not hold that Nasi was a member of any Remus entity. It did not hold that the lis pendens were valid. It did not address membership status, ownership interest in real property, or the propriety of any lien. It remanded solely because the deposition record was ambiguous as to the purpose of one payment. That narrow question is irrelevant to the RICO analysis for four independent reasons.

111. The case is now remanded for trial, which will require Nasi to appear in person in the United States.

**The Guzman Contractor Track**

112. Plaintiff Phillips hired Defendant Guzman beginning in 2022 as a contractor to renovate multiple properties. Across these projects — 53 Farragut Place NW, 917 Delafield Place NE, 6819 8th Street NW, 608 Tennessee Ave. NE, 3308 16th Street NE, and 2220 13th Street NE — Guzman accepted payments totaling over $1,120,000, consistently failed to complete projects on time, abandoned multiple projects entirely, and caused Phillips to incur hundreds of thousands of dollars in additional mortgage payments, extension fees, completion costs, and consequential damages.

29

113. In January 2023, Phillips and Guzman entered into a written Joint Venture Agreement for 6413 Allegheny Ave., Takoma Park, Maryland, whereby Guzman agreed to contribute 50% of all expenses in exchange for 50-60% of profits. By December 2023, Guzman had ceased contributing to the project. On January 10, 2024, Guzman sent Phillips a written email stating he was "going to get paid on 8th street settlement even if the judge later determine I need to refund you." On January 16, 2024, Phillips issued a formal cease-and-desist letter terminating all business. On January 30, 2024, Phillips formally cancelled the Joint Venture Agreement.

114. In March 2025, RERG entered a contract to sell Allegheny for $1,725,000 with closing scheduled for May 20, 2025. Defendants demanded payment or escrow of all proceeds. The cloud caused the May closing to fail, forcing RERG to incur additional carrying costs and reduce the sale price. On June 26, 2025, the Circuit Court for Montgomery County denied Defendants' Motion for Temporary Restraining Order and Motion to Place Sale Proceeds into Court Registry — the most recent judicial rejection of Defendants' claims against Allegheny.

**Pattern of Demands Connecting Each Lien to the Extortion Scheme**

115. For each of the nine predicate acts, Defendants made consistent demands that Plaintiffs either pay money or place all sale proceeds into Defendants' own personal escrow account as the price of removal. This consistent pattern — lien filed, demand made, removal conditioned on payment — establishes that each lien was part of the same coordinated scheme rather than a legitimate exercise of legal rights. The April

30

10, 2024 email is the documentary centerpiece of this pattern. The swift removal of liens on multiple properties upon demand — without any payment — is itself an acknowledgment that those liens lacked legitimate basis.

**The Enterprise's Structure, Roles, and Coordination**

116. Defendants Breece, Wikramanayake, Montero, Guzman, and Nasi, together with United Builders DC Incorporated, constituted an association-in-fact enterprise — the "Lien Extortion Enterprise" — with a common purpose: to file fraudulent liens, freeze real estate sales, and extract money as the price of removal. Each defendant played a defined role:

**Breece** — the operational filer. Breece personally recorded seven of the nine predicate acts: the second 16th Street lis pendens, the five additional property lis pendens, and the Allegheny mechanic's lien. She filed the quiet title action to manufacture the second lis pendens predicate and filed bar complaints against opposing counsel.

**Wikramanayake** — the collection arm. Wikramanayake recorded the first 16th Street lis pendens, transmitted the April 10, 2024 extortion demand coordinating both tracks simultaneously, and personally demanded money for the release of the 16th Street liens and the Allegheny mechanic's lien. He received written confirmation from his own client that all work had stopped by end of 2023 before the mechanic's lien was filed.

31

**Montero** — the institutional hub. Montero provided the organizational platform, professional letterhead, and institutional authority for both Breece and Wikramanayake simultaneously. Managing principal Manny Montero was copied on the April 10, 2024 demand, establishing ratification at the firm's highest level.

**Nasi** — the directing principal of the Nasi track. Nasi retained Montero, directed the filing of Predicate Acts 1 through 7, and authorized the April 10, 2024 coordinated demand made explicitly on his behalf, knowing from the Receipt of Payment in his possession since October 25, 2022 that the $150,000 was not paid for membership.

**Guzman** — the contractor track executor. Guzman fabricated the 8th Street invoice, demanded extortionate payment at closing, and provided the false oral representation of post-termination work that Breece used to file the Allegheny mechanic's lien, while simultaneously admitting to his own attorney that all work had stopped by end of 2023.

117. This division of labor — Breece files, Wikramanayake collects, Montero institutionalizes, Nasi directs, Guzman executes the contractor track — establishes the organizational structure required for an association-in-fact enterprise under *Boyle v. United States*, 556 U.S. 938, 945-46 (2009). This is not attorneys doing sloppy legal work. It is a structured operation with defined roles, documented coordination, and a consistent method of operation across nine predicate acts over more than two years.

## COUNT I

### VIOLATION OF 18 U.S.C. § 1962(c) — CIVIL RICO
### Against All Defendants

118. Plaintiffs reallege and incorporate all preceding paragraphs, including the specific false statement allegations in Section V above.

119. 18 U.S.C. § 1962(c) prohibits any person associated with an enterprise engaged in interstate commerce from conducting the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1964(c) entitles a prevailing plaintiff to treble damages, mandatory attorneys' fees, and costs. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

120. **MONTERO IS DISTINCT FROM THE ENTERPRISE.** Defendants may argue that Montero Law Group, LLC cannot simultaneously be a RICO "person" and a member of the RICO enterprise. That argument fails under *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001), which holds that the distinctness requirement is satisfied so long as the person and the enterprise are not one and the same entity. The Lien Extortion Enterprise is an association-in-fact that includes Nasi, Guzman, and United Builders DC Incorporated — none of whom are Montero employees, agents, or affiliates. They are independent persons with independent interests retained by Montero as clients. The enterprise is therefore legally and factually distinct from Montero as a corporate person.

121. **RULE 9(b) PARTICULARITY.** Plaintiffs plead the RICO predicate acts of fraud with particularity as required by Fed. R. Civ. P. 9(b): the "who" — Breece, Wikramanayake,

Montero, Guzman, and Nasi; the "what" — specific false statements in each instrument as identified in Section V above; the "when" — the specific dates of each filing identified in Predicate Acts 1-9; the "where" — DC land records, Maryland land records, DC Superior Court, and Montgomery County Circuit Court; and the "how" — by filing liens falsely representing qualifying ownership or contractor claims, then demanding money as the price of removal. The April 10, 2024 email is the documentary nexus tying all Defendants and both tracks together.

122. **WIRE FRAUD — SPECIFIC INTERSTATE WIRES.** Each predicate act involved one or more interstate wire transmissions in furtherance of the scheme: (a) Predicate Act 1 — the electronic transmission of the lis pendens instrument to the DC Office of Recorder of Deeds on August 22, 2023, and subsequent email demands for proceeds; (b) Predicate Act 2 — the electronic filing of Case No. 2024-CAB-000785 in DC Superior Court on February 5, 2024, and the electronic recording of the second lis pendens on February 7, 2024; (c) Predicate Acts 3 through 7 — the electronic recording of five lis pendens instruments in the DC land records and corresponding electronic demands for payment; (d) Predicate Act 8 — Guzman's electronic transmission of the fabricated invoice directly to the title company and the January 10, 2024 email to Phillips stating he would "get paid on 8th street settlement even if the judge later determine I need to refund you"; and (e) Predicate Act 9 — the electronic filing of the mechanic's lien petition in Montgomery County Circuit Court on July 23, 2024, and Wikramanayake's subsequent electronic demands for payment of the lien. The April 10, 2024 email — transmitted electronically from

34

Wikramanayake's Montero email address to Plaintiff's counsel — constitutes an additional and independent wire fraud predicate act tying both tracks of the scheme together.

123. **THE NOERR-PENNINGTON SHAM EXCEPTION.** Defendants will assert that filing lawsuits and recording liens is constitutionally protected petitioning activity under the Noerr-Pennington doctrine. That doctrine does not apply here. The sham exception strips away all First Amendment protection where the petitioning activity is (1) objectively baseless and (2) subjectively motivated by bad faith. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993). The objective baselessness prong is established as a matter of law: no reasonable attorney could conclude that a membership interest in an LLC constitutes an ownership interest in the LLC's real property under DC Code § 42-1207(a), or that a mechanic's lien could validly be filed seven months after the contractor's own written admission to his attorney that all work stopped — well past the 180-day statutory deadline. The subjective bad faith prong is established not by inference but on the face of the April 10, 2024 demand, transmitted on Montero letterhead, explicitly labeled admissible, conditioning removal of liens on the surrender of proceeds from every property in every lawsuit into Defendants' own personal escrow account. No attorney acting to protect a legitimate title claim demands escrow of the entire proceeds from an unrelated portfolio of properties. Both prongs are established by documentary evidence. Noerr-Pennington provides no shelter.

124. **THE LITIGATION PRIVILEGE DEFENSE IS UNAVAILABLE.** Defendants will assert the conditional litigation privilege recognized in *Havilah Real Prop. Servs. v. VLK, LLC*, 108 A.3d 334, 339 (D.C. 2015), arguing that filing lawsuits and recording liens constitutes privileged litigation activity. That privilege does not apply to RICO predicate acts and does not override federal law. Even under *Havilah*'s own terms, the privilege applies only where the underlying litigation was pursued in good faith. *Havilah* expressly holds that if the underlying litigation is not in good faith, "no privilege attaches." Wikramanayake's written admission that he had no documentary evidence before the mechanic's lien was filed, Guzman's own written admission to his attorney that all work stopped by end of 2023, and Nasi's sworn admissions establishing his knowledge that the membership predicate was false collectively establish that neither track was pursued in good faith. *Bloom v. Beam*, 99 A.3d 263, 268 (D.C. 2014), further holds that privilege does not shield an improper lis pendens. The privilege is unavailable here as a matter of law.

125. **PATTERN OF RACKETEERING ACTIVITY.** Each of the nine predicate acts constitutes a separate act of Hobbs Act extortion under 18 U.S.C. § 1951 and a separate act of wire fraud under 18 U.S.C. § 1343. The Hobbs Act element of "obtaining property" is satisfied as follows: Predicate Act 8 resulted in the actual transfer of $30,000 from Phillips to Guzman under economic duress — property obtained by Guzman. The remaining predicate acts each constituted an attempt to obtain property through wrongful use of fear — specifically, the attempted extortion of sale proceeds and the attempted compulsion of escrow deposits into Defendants'

36

own personal account. Under *United States v. Nardello*, 393 U.S. 286 (1969), an attempt to obtain property through fear satisfies the Hobbs Act even where the property is not ultimately transferred. The predicate acts did not arise independently. They were coordinated steps in a single scheme: Defendants filed the Maryland Lawsuit and the first lis pendens simultaneously; when the first lis pendens was exposed as defective and cancelled under compulsion, Defendants filed a fabricated derivative action in DC and recorded a new lis pendens the following day; and two months later Wikramanayake transmitted the April 10, 2024 email acting on behalf of both Nasi and Guzman simultaneously — a contractor with no pending legal claim — demanding escrow of proceeds from every property across every case. That single email is the connective tissue proving the nine predicate acts were not isolated filings but coordinated acts of a single enterprise. Nine liens equal nine predicate acts. The predicate acts are related and continuous over more than two years across nine properties, satisfying closed-ended continuity. The scheme remains ongoing, additionally satisfying open-ended continuity. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995).

126. **INJURY.** Plaintiffs suffered concrete, documented injury to business and property directly caused by the racketeering activity:

— $30,000 paid under economic duress at the 8th Street closing — to a contractor who had already been paid in full — to protect innocent third-party buyers held hostage by a fabricated invoice.

37

— 3308 16th Street NE: a $1,350,000 sale delayed eight months. Eight months of mortgage payments, taxes, insurance, and carrying costs on a property that should have closed.

— 6413 Allegheny Ave.: a $1,725,000 sale that failed on May 20, 2025. A forced price reduction. Bond costs. Additional months of carrying costs — all on a property encumbered by a lien filed after the statute of limitations had run by the contractor's own admission.

— Attorneys' fees across multiple jurisdictions defending against liens that courts have repeatedly ordered removed.

— Lost business opportunities: during the period in which Defendants' liens encumbered Plaintiffs' properties and froze Plaintiffs' capital, Plaintiffs were unable to acquire 6809 Whittier Boulevard, Bethesda, Maryland 20817, a specific investment opportunity that became available and was lost as a direct result of the lien scheme freezing Plaintiffs' capital. The property was available for acquisition at approximately $1,000,000, with anticipated renovation costs of approximately $800,000. The property is currently listed at $4,400,000. The lost profit on that transaction exceeds $2,000,000. That loss is a direct and foreseeable consequence of Defendants' conduct and will be established at trial through the testimony of broker Noel Sesay and comparable market transaction data.

— Systemic damage to Plaintiffs' real estate business, deal pipeline, and market reputation.

Total compensatory damages exceed $2,200,000. Treble damages under 18 U.S.C. § 1964(c) exceed $6,600,000, plus mandatory attorneys' fees and costs.

127. **PROXIMATE CAUSE OF WHITTIER LOSS.** The lost acquisition of 6809 Whittier Boulevard was directly and proximately caused by the lien scheme. The first lis pendens against 3308 16th Street NE was recorded on August 22, 2023 and remained in place until the property sold. That lien froze the sale of 3308 16th Street NE for eight months, directly immobilizing the capital Phillips required to pursue acquisitions. The Whittier Boulevard opportunity arose and closed during the period in which that capital was frozen. But for the 16th Street lien, Phillips would have had the liquid proceeds from that sale available to fund the Whittier acquisition. Broker Noel Sesay is prepared to testify to the timeline of the Whittier opportunity, the terms available at the time, and the direct causal connection between the frozen 16th Street proceeds and the lost acquisition. This is not attenuated causation — it is a direct, documented financial chain: Defendants recorded a fraudulent lien, froze a specific sale, immobilized specific capital, and caused the loss of a specific identified property.

**COUNT II**
**VIOLATION OF 18 U.S.C. § 1962(d) — RICO CONSPIRACY**
**Against All Defendants**

128. Plaintiffs reallege and incorporate all preceding paragraphs.

129. 18 U.S.C. § 1962(d) makes it unlawful to conspire to violate § 1962(c). Agreement to participate in the enterprise's racketeering scheme is sufficient — each conspirator

need not personally commit two predicate acts. *Salinas v. United States*, 522 U.S. 52, 63-65 (1997).

130. Each Defendant agreed to participate in the Lien Extortion Enterprise. Breece agreed by personally executing seven of nine predicate act filings, filing the DC quiet title action as a fabricated derivative instrument she personally verified under oath knowing Nasi had no standing to bring a derivative action on behalf of an LLC he was never a member of, and recording the second lis pendens one day after the compelled cancellation. Defendant Wikramanayake agreed by recording the first lis pendens on the same day the Maryland Lawsuit was filed, coordinating both tracks, acting on Defendant Guzman's behalf in the April 10, 2024 email before Guzman had any pending legal claim or formalized attorney-client relationship with Montero, transmitting the April 10 extortion demand, personally demanding money for lien releases, and proceeding with the mechanic's lien filing after receiving written confirmation from his client that the statute of limitations had run. Montero agreed institutionally as demonstrated by Manny Montero's presence on the April 10 demand. Guzman agreed by executing the mechanic's lien track and coordinating with Wikramanayake and Montero. Nasi agreed by directing Defendants to file and maintain lien instruments based on a predicate he knew was false, and by authorizing the April 10, 2024 coordinated demand made explicitly on his behalf.

131. Each conspirator is jointly and severally liable for all damages caused by any overt act in furtherance of the conspiracy. *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983). Plaintiffs are entitled to treble damages, mandatory attorneys' fees, and costs.

**COUNT III**

**ABUSE OF PROCESS**

**Against Defendants Breece, Wikramanayake, Montero Law Group, and Nasi**

132. Plaintiffs reallege and incorporate all preceding paragraphs.

133. Abuse of process requires: (1) an ulterior motive — a purpose other than that for which process was designed; and (2) an act in the use of process not proper in the regular prosecution of the proceeding. *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996); *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980).

134. Defendants used lis pendens proceedings, the quiet title action, and the mechanic's lien process for purposes entirely outside their legitimate function. The ulterior motive is established directly by the April 10, 2024 email conditioning lien removal on escrow of all proceeds across all litigation into Defendants' own personal escrow account — an overbroad demand wholly unrelated to any title claim. A legitimate lis pendens protects a specific title claim on a specific property. Demanding surrender of proceeds from every property in every litigation proves the process was used for financial leverage, not title protection.

135. The filing of the DC quiet title action as a fabricated derivative instrument — brought on behalf of an LLC by a plaintiff who was never its member, asserting a title dispute that neither party to the LLC actually disputed, constructed the day before the

41

cancellation deadline solely to manufacture a new lis pendens predicate — is a textbook improper use of process. Breece personally verified that complaint under oath, swearing to facts she knew were false. The filing of bar complaints against opposing counsel as a harassment mechanism is a further improper use. Wikramanayake's June 4, 2025 admission that he lacked documentary evidence before the mechanic's lien was filed — combined with Guzman's own June 12, 2025 admission to Wikramanayake that all work stopped by end of 2023 — establishes that the lien was filed without evidentiary basis and after the statute of limitations had run. Plaintiffs suffered damages exceeding $2,200,000 as a direct result.

## COUNT IV
### CIVIL CONSPIRACY
### Against All Defendants

136. Plaintiffs reallege and incorporate all preceding paragraphs.

137. Civil conspiracy under DC law requires: (1) an agreement; (2) to accomplish an unlawful act or a lawful act through unlawful means; (3) an overt act in furtherance; and (4) resulting injury. *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994).

138. The agreement among all Defendants is established by multiple independent acts of coordination: (1) Wikramanayake filed the first lis pendens on the same day Breece and Wikramanayake filed the Maryland Lawsuit, demonstrating pre-filing coordination; (2) when that lis pendens was exposed as defective, Breece filed a manufactured derivative action in DC one day before the cancellation deadline and recorded a new lis pendens one day after cancellation — a sequence that could only

42

result from coordinated pre-planning; (3) the April 10, 2024 email acted simultaneously on behalf of both Nasi and Guzman — through a single Montero demand, with Manny Montero copied — at a time when Guzman had no pending legal claim and no formalized representation, proving the coordination predated any legitimate attorney-client basis. The coordinated execution of nine liens across two instrument types over two years, all through the same firm, with consistent demands following each filing, constitutes overwhelming evidence of a pre-existing agreement among all Defendants. All Defendants are jointly and severally liable for all damages caused by any act in furtherance of the conspiracy, exceeding $2,200,000.

## COUNT V
### SLANDER OF TITLE
### Against All Defendants

139. Plaintiffs reallege and incorporate all preceding paragraphs, including the specific false statement allegations in Section V above.

140. Slander of title requires: (1) a false and malicious communication relating to title; (2) resulting damages; and (3) special damages pled with specificity. *Bloom v. Beam*, 99 A.3d 263, 266 (D.C. 2014).

141. **ELEMENT 1 — FALSE STATEMENTS.** The specific false statement in each lis pendens was the representation that a qualifying action under DC Code § 42-1207(a) was pending, asserting the claimant's own ownership interest in the subject real property. As established in Section V above, each instrument contained a false representation of a qualifying predicate. The Mechanic's Lien falsely stated that

43

compensable labor and materials were furnished during the qualifying lien period when no qualifying work occurred after January 16, 2024 — as confirmed by Guzman's own written admission to his attorney.

142. **ELEMENT 2 — MALICE.** Defendants acted with actual malice — with knowledge that the statements were false or with reckless disregard for their truth. *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986). Malice is established by: (a) the April 10, 2024 email proving the purpose was financial leverage, not title protection; (b) Breece's recording of the second lis pendens the day after cancelling the first; (c) Wikramanayake's admission that he had no documentary evidence of qualifying work before filing the mechanic's lien; (d) Guzman's own written admission to Wikramanayake that all work stopped by end of 2023, before the lien was filed; and (e) Nasi's own sworn admissions and the October 25, 2022 Receipt of Payment establishing his knowledge that the $150,000 was not membership consideration. and (f) Breece's personal verification under oath of the DC derivative action — an instrument she knew was legally defective because Nasi lacked standing to bring a derivative action on behalf of an LLC he was never a member of, asserting a title dispute that the LLC's own members never had.

143. **ELEMENT 3 — SPECIAL DAMAGES.** Plaintiffs suffered the following special damages directly caused by Defendants' false recordings: (a) carrying costs across nine properties during lien periods, totaling in excess of $100,000; (b) the coerced $30,000 payment on the 8th Street closing; (c) delayed and reduced sale proceeds on

44

3308 16th Street NE — a $1,350,000 sale delayed eight months; (d) delayed and reduced sale proceeds on 6413 Allegheny Ave. — a $1,725,000 sale delayed and price reduced; (e) bond costs incurred to clear the Allegheny lien; (f) attorneys' fees across all related litigation; (g) the lost acquisition of 6809 Whittier Boulevard, Bethesda, Maryland 20817, which was available for purchase at approximately $1,000,000 with anticipated renovation costs of approximately $800,000 and is currently listed at $4,400,000, representing a lost profit exceeding $2,000,000, to be established at trial through the testimony of broker Noel Sesay and comparable market transaction data; and (h) damage to Plaintiffs' business reputation and deal pipeline. Total special damages exceed $2,200,000.

## COUNT VI
### TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE
### Against All Defendants

144. Plaintiffs reallege and incorporate all preceding paragraphs.

145. Tortious interference with contract requires: (1) a valid contract; (2) Defendants' knowledge; (3) intentional interference by improper means; and (4) resulting damages. *Press v. Howard Univ.*, 540 A.2d 733, 736 (D.C. 1988).

146. **THE HAVILAH PRIVILEGE DEFENSE IS UNAVAILABLE.** Defendants will assert the conditional litigation privilege recognized in *Havilah Real Prop. Servs. v. VLK, LLC*, 108 A.3d 334, 339 (D.C. 2015). That privilege applies only where underlying litigation was pursued in good faith. *Havilah* expressly holds that if the underlying litigation is

not in good faith, "no privilege attaches." Wikramanayake's written admission of no evidentiary support for the mechanic's lien, Guzman's own written admission that all work stopped by end of 2023, and Nasi's sworn admissions establishing his knowledge that the membership predicate was false, collectively establish that neither track was pursued in good faith. *Bloom v. Beam*, 99 A.3d 263, 268 (D.C. 2014) further holds that privilege does not shield an improper lis pendens.

147. ELEMENT 1 — VALID CONTRACTS. (a) 3308 16th Street NE: In or around February 2024, Plaintiffs entered into a listing agreement and a binding buyer contract for $1,350,000. (b) 6813 8th Street NE: In January 2024, a valid contract of sale was pending with a scheduled closing. (c) 6413 Allegheny Ave.: In March 2025, RERG entered into a valid contract of sale for $1,725,000, with closing scheduled for May 20, 2025.

148. ELEMENT 2 — DEFENDANTS' KNOWLEDGE. The April 10, 2024 email opens: "We are writing in hopes that we can facilitate the sale of the 16th Street property" — direct proof of knowledge of the 16th Street contracts. Guzman had personal knowledge of and directly interfered with the 8th Street closing. Defendants filed their emergency TRO motion timed to the scheduled May 20, 2025 Allegheny closing date.

149. ELEMENT 3 — INTENTIONAL INTERFERENCE BY IMPROPER MEANS. Defendants intentionally interfered with each contract by recording liens knowing that title companies would automatically freeze any sale encumbered by a lien or

pending litigation, regardless of legal merit, for the express purpose of obstructing closings and extracting money.

150. ELEMENT 4 — RESULTING DAMAGES. The 16th Street sale was delayed eight months, causing carrying costs and loss of proceeds. The 8th Street closing was disrupted, causing Phillips to pay $30,000 under duress. The Allegheny closing failed on May 20, 2025, causing RERG to incur additional carrying costs and a reduced sale price. Total damages exceed $2,200,000.

151. PROSPECTIVE ECONOMIC ADVANTAGE. Plaintiffs had a valid business expectancy across their entire DC real estate portfolio. The April 10, 2024 email extended the escrow demand to "the other properties as well" — demonstrating Defendants' knowing and intentional targeting of Plaintiffs' broader business expectancy across all properties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against all Defendants, jointly and severally, and award the following relief:

(1) Compensatory damages in excess of $2,200,000 for all economic losses including blocked and delayed closings, forced sale price reductions, mortgage carrying costs across nine properties, the coerced $30,000 payment under duress, the lost acquisition of 6809 Whittier Boulevard, and damage to Plaintiffs' real estate business, in an amount to be proven at trial;

**(2)** Treble damages pursuant to 18 U.S.C. § 1964(c), resulting in a minimum RICO damages award of $6,600,000;

**(3)** Mandatory attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c);

**(4)** Punitive damages for Defendants' malicious, deliberate, and willful conduct, in an amount not less than $6,000,000;

**(5)** Injunctive relief prohibiting all Defendants from filing any lien, notice of lis pendens, mechanic's lien, or other encumbrance against any property owned, managed, or controlled by Plaintiff Phillips or any entity in which he holds a membership or management interest, without prior leave of this Court;

**(6)** Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

**(7)** The aggregate of the foregoing relief, exclusive of mandatory attorneys' fees, costs, and interest, exceeds **$14,800,000**; and

**(8)** Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

Respectfully submitted,

/s/Solon Phillips
**Solon Phillips, Esq.**
DC Bar No. 1602416
Remus Enterprises Law Group

48

1629 K Street, Suite 303
Washington, DC 20006
Tel: (202) 329-1799
solon@remuslaw.com
*Counsel for Plaintiffs, and Plaintiff Pro Se*

Dated: March 31, 2026